SEVENTH AVENUE, INC.,

        Plaintiff,

  v.                                    Case No. 16-cv-325-pp

SHAF INTERNATIONAL, INC.,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REPLY (DKT. NO. 40) AND REQUIRING ADDITIONAL INFORMATION FROM THE PLAINTIFF BY MARCH 21, 2018**

---

On June 23, 2017, plaintiff Seventh Avenue Inc. filed an amended motion for attorneys' fees and costs, asking the court for an award of $27,322.32. Dkt. No. 35. The defendant responded, arguing that the plaintiff has used excessively expensive attorneys, expended excessive hours litigating the case and failed to use less costly alternatives. Dkt. No. 37 at 1. The plaintiff filed a reply, in which it updated the amount requested to $34,975.90. Dkt. No. 38. The defendant then filed an "objection to and motion to strike" the plaintiff's reply. Dkt. No. 40. The court will deny the motion to strike, and will require the plaintiff to provide additional information regarding the reasonableness of hourly rates.

## I.    Background

On March 16, 2016, the plaintiff filed this case under the Lanham Act, alleging trademark infringement. Dkt. No. 1 at 1. Six months later, the parties

1

asked the court to enter a consent judgment, dkt. nos. 7 and 8, and on September 20, 2016, the court entered an order for consent judgment, permanent injunction, and other relief. Dkt. No. 10. As part of the consent judgment, the court ordered that "[the plaintiff] shall be awarded its damages, reasonable attorneys' fees and all costs incurred in enforcing any provision set forth in the Judgment." Dkt. No. 10 at 4, ¶7.

On January 17, 2017, the plaintiff filed a motion, asking the court to find the defendant in contempt of the consent judgment. Dkt. No. 11. The motion alleged that the defendant continued to sell the infringing goods and that the defendant had not provided the plaintiff with the "certified statement" of compliance that the consent judgment required. Dkt. No. 11 at 3, ¶¶8-9. The plaintiff included declarations from the plaintiff's outside counsel and in-house counsel, detailing how they had discovered the defendant's alleged breach. See Dkt. Nos. 12, 13.

Under the court's local rules, the defendant had twenty-one days to respond to the motion, see Civil L.R. 7(b) (E.D. Wis.)—in this case, around February 7 or 8, 2017. The defendant did not respond to the motion in that time. So, on February 13, 2017, the plaintiff filed a motion for its attorney's fees and costs incurred in enforcing the consent judgment. Dkt. No. 15. That motion asked for $16,292.85 and costs of $384.35. Dkt. No. 15 at 2-3. The deadline for responding to that motion would have been around March 6, 2017.

The day after it received the motion for fees and costs, the court held a hearing on the plaintiff's motion for an order of contempt. Dkt. No. 19. Counsel

for the defendant did not appear at the telephonic hearing. Id. The court told the plaintiff that it would grant the motion for contempt, but would wait to rule on the motion for attorneys' costs and fees until after the period for objections had expired. Id. On February 16, 2017, the court issued two orders: (1) an order granting the plaintiff's motion for contempt and ordering that the defendant "shall pay all of the plaintiff's attorney's fees and costs associated with the motion for contempt[,]" dkt. no. 20 at 2;  and (2) an order to show cause requiring the defendant to show cause as to why Attorney Seifert (the only counsel on record for the defendant) did not appear at the February 14, 2017 motion hearing and why the defendant did not respond to the plaintiff's motion for contempt, dkt. no. 21.

Two weeks later, on March 2, 2017, the court received the defendant's response to the motion for contempt, dkt. no. 22; a response from Attorney Seifert as to why he did not appear for the February 14, 2017 hearing, dkt. no. 24; a motion for reconsideration and to vacate the judgment, dkt. no. 23; and the defendant's objections to the plaintiff's petition for fees, dkt. no. 25. The plaintiff responded to these motions on March 13, 2017, dkt. no. 26, and the court held a telephonic hearing on May 17, 2017, dkt. no. 29. At this hearing—while the court was in the process of discussing the pending motions—Attorney Seifert told the court that he was in state court and that he could not continue on the phone call. Dkt. No. 29. With some frustration, the court terminated the call, and set an adjourned hearing for June 7, 2017—a date on which all parties could appear and participate. Id.

On June 6, 2017, the plaintiff filed a "supplement" to its motion for attorneys' fees and costs. Dkt. No. 30. The supplement sought an additional award of $14,108.97 in attorneys' fees and costs, for a total award of $30,401.82. Id. at 3. The plaintiff grounded its increased request on the additional work the plaintiff's lawyers had done in the intervening weeks.

At the June 7, 2017 hearing, the court denied the defendant's motion to reconsider and vacate the judgment, concluding that the defendant had had the opportunity to respond to the motion for contempt (and to appear at the February 13, 2017 hearing) but had not done so. Dkt. No. 34 at 3. As for the plaintiff's motion for fees and costs, the court noted that the motion requested fees both for work performed by outside counsel and for work performed by the plaintiff's in-house lawyer, who was an employee of the plaintiff. The court said that it was willing to award fees to in-house counsel only if he had done work that the plaintiff otherwise would have had to pay outside counsel to do. Id. (citing Procter & Gamble Co. v Weyerhaeuser Co., 711 F.Supp. 904 (N.D. Ill. 1989)). "The court opined that a number of things [in-house counsel] had billed for appeared to be traditional in-house counsel work, such as review of documents prepared by outside counsel." Id. The court concluded the hearing by asking the parties to submit more information regarding the attorneys' fees, and "indicated that it would grant the motion for attorneys' fees, but would defer issuing its ruling until the parties had the opportunity to brief the appropriate amount of the award." Id.

On June 23, 2017, the plaintiff filed an "amended motion for attorney fees and costs[,]" dkt. no. 35, together with a declaration from Attorney Engling, the in-house lawyer, dkt. no. 36. The motion asked the court to award a total of $27,322.32—a reduction of $3,079.50 from the previous request. Id. The defendant responded, dkt. no. 37, and the plaintiff replied, dkt. no. 38. The plaintiff's reply brief asked for a *different* award of fees; it asked for $34,975.90—some $7,600 *more* than it had requested in the amended petition. Dkt. No. 38. In a footnote, the plaintiff explained that its June 23, 2017 request had included *estimated* costs for the June 2017 hearing (and associated preparation) and that, since filing that amended motion, the plaintiff's outside counsel had provided an invoice for *actual* fees associated with the June 2017 proceedings. Id. at 1, n.1. Additionally, the plaintiff stated that its outside counsel had expended "an additional $2,352.00 in preparing this reply brief." Id.

On July 25, 2017, the defendant filed an "objection to and motion to strike plaintiff's reply[.]" Dkt. No. 40. In one paragraph of its sixteen-page submission, the defendant argued that the court should disregard the plaintiff's reply brief (and its supporting declaration) because the defendant did not have an opportunity to respond. Dkt. No. 40 at 12. The defendant also reiterated its arguments against awarding the plaintiff any attorneys' fees at all, and asked the court to award the *defendant* attorney's fees "for the work [its] counsel had to complete in order to repeatedly respond [to the plaintiff]." Id.

The plaintiff responded on August 2, 2017, dkt. no. 41, and the defendant (untimely) filed a reply on August 30, 2017, dkt. no. 42.

## II.    Analysis

### A.    Standard For Awarding Attorneys' fees

To determine the amount of an award of attorneys' fees, the court uses the "lodestar" method, in which it multiplies "'the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 639 (7th Cir. 2011) (citing Hensley v. Eckerhart, et al., 461 U.S. 424, 433 (1983)). "When calculating attorneys' fees, the reasonable hourly rate is to be derived from the market rate for the services rendered." Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003). While "[t]he fee applicant bears the burden of 'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community[,]'" Pickett, 664 F.3d 640 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)), "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012).

"If the fee applicant satisfies their burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" Pickett, 664 F.3d at 640 (quoting People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1313 (7th Cir. 1996)). "Once the district court has

established the lodestar, the court may adjust it to account for factors not subsumed by the lodestar calculations." Id. [1]

B.    Parties' Arguments

The plaintiff argues that its outside attorneys seek compensation for time spent (a) investigating and drafting the contempt motion; (b) drafting responses to the defendant's motion for reconsideration and objection to the plaintiff's petition for attorneys' fees; (c) preparing for and attending the February 14, May 17 and June 7 hearings; and (d) drafting and submitting the amended petition. Dkt. No. 35 at 3. Both of the plaintiff's outside attorneys work for Michael Best & Friedrich, LLP; in the first billing affidavit submitted, Attorney Scheller attested that in January 2017, he billed at $530 an hour and Attorney Salman billed at $260 an hour. Dkt. No. 16 at 2, ¶3. In a later affidavit, Attorney Scheller stated that his "2017" billing rate was $545, and that Salman's was $280. Dkt. No. 31 at 3, ¶3.

The plaintiff cites Heder v. City of Two Rivers, 255 F. Supp.2d 947, 953 (E.D. Wis. 2003), for the proposition that all it has to do is identify outside counsel's *actual* billing rates in order to prove the "market rate" for the purposes of calculating the lodestar. Dkt. No. 38 at 3. The plaintiff notes that Seventh Avenue has timely paid all of Michael's Best's invoices, stating that "'[t]he best evidence of whether attorney's fees are reasonable is whether a

_____

[1] Though, as the Supreme Court noted in Perdue v. Kenny A. ex rel Winn, 559 U.S. 542, 553 (2010), "the lodestar figure includes most, if not all of the relevant factors constituting a 'reasonable' attorney's fee[.]'" (quoting Delaware Valley I, 478 U.S. 546, 566 (1986)).

party has paid them.'" <u>Id.</u> at 2-3 (quoting <u>Cintas Corp. v. Perry</u>, 517 F.3d 459, 469 (7th Cir. 2008)).

The plaintiff observes that the defendant has not suggested an alternative billing rate, and asserts that courts have found this omission fatal to a party's assertion that billing rates are unreasonable. <u>Id.</u> at 4 (citing <u>Design Basics LLC v. Lexington Homes Inc.</u>, No. 14-C-1102, 2017 WL 1901453 (E.D. Wis. May 8, 2017) and <u>Doden v. Plainfield Fire Prot. Dist.</u>, No. 94 C 6294, 1996 WL 180073, at *2 (N.D. Ill. Apr. 11, 1996)).

As for in-house Attorney Engling, the plaintiff says that "if Attorney Engling had not completed this work, Attorneys Scheller and Salman would have completed this work and petitioned the Court to award these fees for their work instead." Dkt. No. 35 at 4 (citing <u>Textor v. Bd. of Regents of N. Ill. Univ.</u>, 711 F.2d 1387, 1396-97 (7th Cir. 1983)). The plaintiff asserts that an hourly rate of $490 is appropriate for Attorney Engling's services due to his twenty-two years of experience and because that was his billing rate before leaving Michael Best. <u>Id.</u> at 5-6.

Finally, as an umbrella reason for the court to grant the requested fees, the plaintiff argues that the court is enforcing the consent judgment, which stated that the plaintiff could recover all reasonable attorneys' fees—whether they be from outside or in-house counsel. <u>Id.</u> at 5.

The defendant responds that the plaintiff has not produced satisfactory evidence supporting its assertion that the hourly rates and hours expended are in line with the prevailing market rates. Dkt. No. 37 at 4-5 (citing <u>Pickett</u>, 664

F.3d at 639). After explaining how it believes the court should calculate the "lodestar" method, the defendant contends that the plaintiff "never explain[ed] why its' requested rates and hours are in line with those prevailing in the community." Id. at 7. As the plaintiff noted in its papers, the defendant does not argue (nor introduce evidence of) what the "reasonable" rate should be. The defendant also argues that the plaintiff over-litigated the case and failed to mitigate costs. Id. It points to the plaintiff's first motion for fees (dkt. no. 15) and states that a bill of $16,000 to purchase three items of clothing and to draft a motion for contempt is excessive. Id.

As for the plaintiff's in-house counsel's fees, the defendant argues that "[the plaintiff] did not refer to a single specific act of in-house counsel that involved work that would otherwise have been performed by outside counsel." Id. at 8. It contends that the plaintiff failed to justify Attorney Engling's fees because the plaintiff's data in support of his request made it difficult for the defendant to determine whether Attorney Engling rendered duplicative or unnecessary services. Id.

In reply, the plaintiff increased the amount of its requested reward, asserting that "[s]ince drafting the Amended Petition . . . Michael Best has prepared its June 2017 invoice[,]" dkt. no. 38 at 1, n.1, and claiming that its hourly rates are reasonable because they are *actual* billing rates for Michael Best (which are, in turn, based on an annual survey of rates charged by local firms of comparable size), id. at 2.

Because the plaintiff changed the amount of its fee request in the reply brief and included a new declaration from Attorney Salman, the defendant objected, and asked the court to strike the plaintiff's reply. Dkt. No. 40. The majority of the motion to strike reiterates arguments the defendant made to the court in its response brief: that the plaintiff did not provide sufficient detail; that the plaintiff over-litigated the case; and that the defendant cannot tell whether the plaintiff's in-house counsel provided unnecessary services. Id. at 2. The defendant does not mention striking the reply until page five, where it states that "the exhibits [the plaintiff] tendered with its reply brief were required to have been submitted previously with its original brief, affording [the defendant] the opportunity to respond." Id. at 5. The defendant does not elaborate further on this claim until page twelve, where it repeats this contention. Id. at 12.

The defendant then argues that the plaintiff's failure to provide the defendant with a more detailed bill of costs "constitutes an admission of fact." Id. at 13. The defendant alleges that because the plaintiff has not provided sufficient detail, "the Court should take, as admitted, the failure of [the plaintiff] along with their exhibits, declarations, etc. for purposes of determining whether it failed to provide sufficiently detailed information or evidence about the reasonable of its services and fees." Id. The defendant also asks the court to sanction the plaintiff under Rule 11 for making this matter so difficult and "because . . . [the plaintiff] failed to mitigate legal fees." Id. at 14.

C.    <u>Analysis</u>

1.    *Motion to Strike Plaintiff's Reply (Dkt. No. 40)*

The court will deny the defendant's motion to strike the reply brief. The defendant's argument is confusing, but as far as the court can tell, the defendant asserts that it did not have the opportunity to contest the basis for the additional amounts the plaintiff requested in its reply. The court may have been inclined to agree with the defendant, had the defendant not taken the liberty of filing, along with the motion to strike, the very objections it says it didn't get to make. The majority of the so-called motion to strike *is* the defendant's objections to the new information in the plaintiff's reply brief. The defendant *has* taken its opportunity to respond to plaintiff's reply brief and the declaration and exhibits that support it. For that reason, the court will deny the motion to strike.

The court also notes that the defendant's argument that the court should award attorneys' fees to the defendant is a head-scratcher. The defendant did not timely respond to the motion for contempt. The defendant did not appear for the first hearing. If the litigation has become complicated, or protracted, it is because of the defendant's failures to respond. The defendant also threatens that if the court imposes fees and costs, it will appeal. The court does not know whether this threat is meant to deter the court from awarding fees and costs under the consent judgment, or to coerce the plaintiff into settling. Regardless, it is the defendant's right to appeal if it chooses to do so, and the court assumes it will make that decision in good faith.

2.     *Motion for Attorneys' Fees (Dkt. No. 35)*

The court granted the plaintiff's motion for a contempt order. Dkt. No. 20. It denied the defendant's motion asking it to reconsider that decision. Dkt. No. 34. It ruled that it would grant the plaintiff's request for attorneys' fees, given that the consent decree provided for that remedy in the event of a violation of the decree. Id. at 3. The only remaining issue is the amount of the award.

a.     Math

The plaintiff's final request—part of its reply brief in support of the motion for fees and costs—is for an award of $34,975.90. Dkt. No. 38 at 1. The court cannot figure out how the plaintiff got to that number, despite spending considerable time trying to do so.

i.     **Documents filed**

The plaintiff originally asked for fees and costs of $16,292.85. Dkt. No. 15. This broke down to $4,932.50 in fees for Attorneys Scheller and Salman's work; $10,976.00 in fees for Attorney Engling's work; and $384.35 in costs to Attorney Engling for purchasing two infringing products. Id. at 2-3. The plaintiff supported that motion for that award with declarations from Attorneys Scheller and Engling. Dkt. Nos. 16, 18. These declarations included work performed through January 30, 2017. Id. The court understands the basis of that request.

Over five months later, after two hearings and the day before the June 7 2017 hearing, the plaintiff submitted a "supplement" to the fee petition,

ostensibly to update the court on the costs its attorneys had incurred since the first fee petition. Dkt. No. 30. This supplement asked for an additional $14,108.97, for a total sum of $30,401.82. Id. at 4.

The declarations the plaintiff submitted in support of the additional $14,108.97 do not add up to that amount. Attorney Scheller's declaration, dkt. no. 31, asked for $9,086.50 in fees for work performed from February 13, 2017 through May 18, 2017. Dkt. No. 31 at 1-3, ¶3. The declaration *estimated* that Attorneys Scheller and Salman would incur $3,712.50 in costs for traveling to and from Milwaukee for the June 7, 2017 hearing. Id. at 3-4, ¶4. Attorney Engling's declaration stated that he had purchased several more infringing products, incurring a total cost of $589.97. Dkt. No. 32. The $9,086.50 for the February through May work, plus the estimated $3,712.50, plus $589.97 for the purchase of infringing products, totals $13,388.97, not $14,108.97.

One would think that math error irrelevant, because about three weeks later, on June 23, 2017, the plaintiff filed the amended fee petition. Dkt. No. 35. This motion asked for a total of $27,322.32—$15,715.00 for Attorneys Scheller and Salman, $10,633.00 for Attorney Engling, and $974.32 for the costs of purchasing infringing products. Id. The amount requested for Engling's fee was $343 *less* than the amount Engling originally had requested, but was supported by a new declaration Engling filed, dated June 23, 2017, indicating that this was the amount he sought for work he'd done between January 4 and January 30, 2017. Dkt. No. 36. As for Michael Best's fees, the motion does not explain the source of the $15,715.00 figure. It appears to be the sum of the

$4,932.50 from the original fee application (dkt. no. 16 at 2, ¶3), plus the $9,086.50 from the supplement (dkt. no. 31 at 3, ¶¶2-3), and the $1,696.00 that the plaintiff's amended motion claims Attorneys Scheller and Salman spent drafting and submitting the amended petition (dkt. no. 35 at 3, ¶10). (The defendant did not submit any declarations or other support for the claim that Michael Best incurred $1,696 in drafting the amended petition.)

### ii. **The plaintiff's calculation**

Just when the court thought its math was back on track, however, the plaintiff filed its reply brief. Dkt. No. 38. In the reply brief, the plaintiff asked for $34,975.90, and purported to explain how it got to this amount in a footnote on the first page of the brief. Id. at n.1.

The footnote begins by reminding the court that the plaintiff's amended fee petition asked for $27,332.32. Id. That is correct—that petition asked for $15,715.00 for the Michael Best lawyers, $10,633.00 ($343 short) for Attorney Engling and $974.32 for the costs of purchasing infringing products. Dkt. No. 35. According to the amended petition, which the plaintiff filed on June 23, 2017, the fees for the Michael Best lawyers covered their parts in "investigation and drafting of the Motion [presumably the motion for a contempt order]," the responses to the plaintiff's motion for reconsideration and objection to the fee application, and preparation and attendance at the February 14, May 17 and June 7 hearings, as well as the time they spent drafting the amended petition. Id. at 3, ¶10.

The footnote next asserts that the plaintiff "provided time entries for Michael Best's fees, which totaled $14,019.00. (Dkt. #16, 31.)." Dkt. No. 38 at 1 n.1. This assertion is mystifying. Docket number 16 is the original declaration in support of the original fee application, which asked for $15,908.50 in total attorneys' fees for both outside and in-house counsel. Docket number 31 is Attorney Scheller's declaration in support of the "supplement" filed on June 6, 2017—over two weeks *before* the amended petition. It sought fees only for the Michael Best lawyers—$9,086.50 for work performed since the original application (included in the $27,332.32 referenced above), plus an estimated $3,712.50 for the June 7 hearing (included in the amended petition). When the court adds these two amounts, it gets $12,799.00—not the $14,019.00 referenced in the footnote.

Next, the footnote asserts that outside counsel incurred $10,710.80 in fees and costs for attending the June hearing and drafting the amended fee petition. Dkt. No. 38 at 1 n.1. In support of this assertion, the footnote references Attorney Salman's attached declaration, which is on the court's docket at 39-2 and was filed on July 19, 2017. Attorney Salman's invoice indicates that $10,710.80 is the actual amount of fees and costs incurred between June 3, 2017 and June 26, 2017 (as opposed to the $3,712.50 Michael Best had estimated it would cost to prepare for and attend the June 7 hearing).

Finally, the footnote asserts that outside counsel incurred $2,352 in preparing the reply brief. Dkt. No. 38 at 1, n.1. It refers the court to "*Id.*, ¶6" in

support of this assertion. Id. The court assumes this is paragraph 6 of Attorney Salman's declaration, in which she indicates that she spent 8.4 hours at her rate of $280 an hour to research and analyze case law, as well as to draft the reply brief and her declaration. Dkt. No. 39 at ¶6. There is no invoice or bill attached.

### iii. **The court's calculations**

This convoluted recitation has made this court's task of trying to figure out what fees the plaintiff actually incurred, and when, difficult. The best the court can manage is this:

Michael Best incurred fees of **$4,932.50** between January 10 and January 30, 2017. Dkt. No. 16.

Attorney Engling has requested fees of **$10,633** between January 4 and January 30, 2017. Dkt. No. 36.

Attorney Engling incurred costs of **$384.35** to purchase two infringing jackets. Dkt. No. 15.

Michael Best incurred fees of **$9,086.50** between February 13, 2017 and May 18, 2017. Dkt. No. 31.

Attorney Engling bought an additional three jackets on March 3, 2017, for additional costs of **$589.97.** Dkt. No. 32.

Michael Best incurred fees and costs of **$10,710.80** between June 3 and June 26, 2017. Dkt. No. 39-2.

Michael Best appears to have incurred fees of **$2,352** sometime between June 26, 2017 and July 19, 2017 (the date it filed the reply brief). Dkt. No. 39 at ¶6.

By the court's calculations, this comes to a total of **$38,689.12** in requested fees and costs. The court's calculations total $3,713.22 *more* than the plaintiff's calculations, which is eerily close to the amount the plaintiff estimated it would

cost to prepare for and attend the June 7, 2017 hearing. The court cannot explain the discrepancy.

It would be quite helpful to the court if the plaintiff would submit the invoices/billing statements upon which it relies, a statement of the total amount of fees it seeks (taking into account the adjustments the court makes below), and clearly explaining how it reached that total amount.

### b. Reasonableness

The defendant does not challenge the plaintiff's math. Rather, it argues that the hourly rates the attorneys charged are excessive, that the amount of time they expended is excessive, that the defendant "over-tri[ed]" the case and that it failed to use less expensive lawyers. Dkt. No. 37 at 1. All of these arguments relate to the reasonableness of the plaintiff's requested fees.

The consent order provided that the defendant "shall be awarded its . . . reasonable attorneys' fees and costs incurred in enforcing any provision set forth in the Judgment." Dkt. No. 10 at 4. Thus, the court must determine whether the plaintiff's requested fees are "reasonable."

### i. **Michael Best's fees**

### AA. <u>Hourly rates</u>

As of the date of the original fee petition, Attorney Scheller billed at $530 an hour, and Attorney Salman billed at $260 an hour. Dkt. No. 16 at ¶3. In the June 6, 2017 Scheller declaration filed in support of the supplement, however, Scheller stated that "[a]s of 2017, [his] hourly rate . . . in this matter is $545 per hour[,]" and that Attorney Salman's rate was $280. Dkt. No. 31 at ¶3.

17

Every billing entry after January 31, 2017 uses the higher hourly rate. The court assumes that Michael Best increased its billing rate sometime after January of 2017. Either way, the plaintiff asserts that Michael Best sets its hourly rates "in the context of a competitive market for legal services after surveying rates charged by local firms of comparable size." Id. at ¶5. Schaller's hourly rate is higher because he is an equity partner with some twenty years of litigation and intellectual property experience, while Attorney Salman is an associate with, at the time, some four years of experience. Id. at ¶¶6-7.

The defendant argues that the plaintiff chose to use "excessively expensive attorneys." Dkt. No. 37 at 1. It alleges that "the average cost of an attorney in Milwaukee is far less than the $530 per hour that Plaintiff claims in its petition." Id. It also argues there was no need for such expensive attorneys to conduct "rather routine" research and drafting. Id. at 1-2.

The defendant misstates the standard. The court does not determine whether the hourly rate is reasonable by looking at the "average" cost of a generic attorney in a particular geographic location. Nor does it engage in a calculation of whether the plaintiff "needed" to hire a particular attorney. Rather, it starts by looking at an attorney's "actual billing rate for similar litigation." Pickett, 664 F.3d at 640 (citing Denius, 330 F.3d at 930). The Supreme Court has said that the fee applicant bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonable comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11.

The court is accustomed to fee applicants submitting third-party affidavits from other attorneys in the same practice area, attesting to the fact that the applicant's rates are market for someone of the applicant's experience. The plaintiff has not provided such an affidavit. Rather, the plaintiff relies on Judge Adelman's decision in Heder, 255 F. Supp. 2d at 953, for the proposition that all it has to do is inform the court of its actual billing rates to meet its burden to show that the rates are reasonable. The plaintiff reads too much into Heder. First, the applicant in Heder attested to the fact that "these were the rates he charges to all his regular, hourly, paying clients." Id. In contrast, Attorney Scheller's affidavit indicates that $545 was his hourly rate for "this matter." Dkt. No. 31 at 3, ¶3. Further, the applicant in Heder submitted an affidavit from another attorney in the same practice area; the plaintiff here has not. Finally, the defendant did not contest the hourly rate in Heder; the defendant here has. Similarly, while the Seventh Circuit held in Johnson that the attorney's own billing rate is the "best evidence" of his or her market rate, the applicant in that case also had submitted third-party affidavits. Johnson, 668 F.3d at 933.

Finally, the plaintiff relies on Doden v. Plainfield Fire Prot. Dist., Case No. 94 C 6294, 1996 WL 180073 at *2 (N.D. Ill., Apr. 12, 1996) for the proposition that if the defendant does not provide the court with evidence to support an alternative billing rate, the plaintiff's assertion of its own billing rate establishes

the market rate. But in <u>Doden</u>, the fee applicant provided the court "with previous cases in which [counsel was] awarded similar rates." <u>Id.</u> The plaintiff has not provided this court with previous cases. The plaintiff cites <u>Design Basics</u>, 2017 WL 1901453 at *2 for the same proposition, and it is true that Judge Griesbach noted the objecting party's failure to propose an alternative rate. But in <u>Design Basics</u>, the applicant had agreed to accept a 20 to 23% discount on its fees; because the hourly rates the applicant had accepted "[were] below the rate its attorneys normally bill for comparative work," and because the objector had not suggested an alternative, Judge Griesbach found the rates reasonable. <u>Id.</u>

It may be that Scheller and Salman's rates were comparable to those of other IP and litigation counsel with similar experience levels. It may be that they have had their billing rates approved as reasonable in other cases. It may be that they billed Seventh Avenue at the same rates they bill other clients with similar matters, or even gave Seventh a discount. But the court does not know any of these things. Before it accepts Scheller and Salman's rates as reasonable for the purposes of setting the lodestar, the court needs something more—a third-party affidavit, another case in which a court had approved these rates, or some other evidence beyond the plaintiff's assertion that these were Scheller and Salman's rates for this matter.

## BB. <u>Number of hours</u>

The defendant also argues that the number of hours Michael Best spent working on the case is unreasonable and excessive. It argues that Michael Best

"over-tri[ed]" the issue, and that the work was simple enough that much of it could have been accomplished by paralegals and "non-professionals." Dkt. No. 37 at 2. (The defendant often conflates Michael Best and Attorney Engling in its arguments; the court assumes that it means that one wouldn't need a licensed lawyer to go out and buy some jackets.)

Michael Best indicates that it spent 12.6 hours preparing for, researching and drafting the motion for contempt, communicating with the defendant after filing the motion, and preparing for the hearing on the motion. Dkt. No. 16. The motion itself is four pages long and contains no case law. Dkt. No. 11. It is accompanied by declarations from Salman and Engling, describing the research they did to figure out whether the defendant was selling infringing products. Salman's work included a "simple Google search" that revealed web pages and a Youtube video. Dkt. No. 12. The court agrees that this kind of research could have been done by a non-lawyer, but a review of the billing detail for January of 2017 does not reflect that Michael Best charged for the Internet research. Dkt. No. 16. The court finds that all of the itemized entries for January 2017 are reasonable. Dkt. No. 16.

The next billing statement recounts the work Michael Best did to prepare and litigate the fee petition, and the work that resulted from the plaintiff's preparation and filing of the fee petition (which it did in response to the defendant's failure to respond to the contempt motion), its work dealing with the defendant's filings after the defendant failed to appear at the contempt hearing, and its work preparing for the May hearing. Dkt. No. 31. While the

court is a bit surprised that Michael Best bills for tasks that take less than two tenths of an hour, it does not find any of the entries themselves to be unreasonable. This is particularly true given the fact that the defendant's non-responsiveness to the *court* occasioned much of the 26.3 hours of work over four months.

The court does have concerns with the June 2017 billing statement. Dkt. No. 39-2. As the court has noted, Michael Best filed both a supplement to the original fee petition and an amended fee petition. Salman billed 3.8 hours to draft the supplement, and 4.2 hours to draft the amended petition, despite the fact that the amended petition was repetitive of some prior filings. Both Scheller and Salman attended the June 7 hearing in person; Scheller billed 4 hours for preparing for the hearing, traveling to it and attending it, and Salman billed 6.5 hours for the same. Each attorney billed for mileage to drive to and from the hearing ($83.00, approximately); it appears they came in separate vehicles. All of this resulted in a bill for 29.80 hours over less than a month. The court finds this excessive. The court will reduce the time Salman billed for preparation of the amended petition by three (3) hours, and will reduce her time by four (4) hours for the hearing itself. It will also deduct the $83.27 for Salman's mileage. This results in a deduction of **seven (7) hours of Salman's time**, and **$83.27** in costs.

Finally, Salman indicated that she spent 8.4 hours drafting the reply brief. There is no itemized billing statement attached for this assertion. While the court does not think it unreasonable that it might take eight and a half

hours to draft a seven-page reply brief and a three-page affidavit and pull together attachments, the court will require the plaintiff to submit evidence in support of this part of the request.

## ii. **Attorney Engling's fees**

Attorney Engling is employed by the plaintiff as in-house counsel. He presumably is paid a salary to do legal work for the plaintiff. Accordingly, awarding attorneys' fees "for in-house counsel [is] appropriate where counsel is performing legal work that would otherwise be performed by outside counsel." Procter & Gamble, 711 F.Supp. at 906 (citing Scott Paper Co. v. Moore Business Forms, Inc., 604 F.Supp. 835, 837 (D.Del. 1984)). An award of in-house counsel fees also recognizes that "[l]awyers who devote their time to one case are unavailable for others, and in deciding whether it is prudent to pursue a given case a firm must decide whether the cost—including opportunities foregone in some other case, or the price of outside counsel to pursue that other case—is worthwhile." Cent. States, Se. and Sw. Areas Health and Welfare Fund v. Lewis, 745 F.3d 283, 287 (7th Cir. 2014). In holding that a party may recover attorneys' fees for work done by salaried counsel, the Seventh Circuit has held that the "prevailing party's decision as to how to engage counsel should have no bearing upon the court's decision to punish malfeasant counsel." Textor, 711 F.2d at 1396.

## AA. Hourly rate

The amount of fees awarded for in-house counsel work "is based on the market price of those services in the law firm market." Lewis, 745 F.3d at 287.

23

Engling's second declaration explains that, as of June 2017, he had twenty-two years of legal experience. Dkt. No. 36 at ¶2. Before going in-house, he practiced at Michael Best, specializing in intellectual property. Id. He has an LLM in intellectual property law. Id. He lists a billing rate of $490 per hour, which he says would have been his minimum billing rate in private practice. Id. at ¶4.

The court has the same concerns with Engling's fees as it does with those of outside counsel. It may well be that $490 is a reasonable rate for an attorney of his experience and expertise, but the court has no comparators by which to make that determination. The court notes, however, that likely any evidence the plaintiff submits to support outside counsel's rate would support Engling's.

BB.    Number of Hours

Engling billed only for work performed between January 4 and January 30, 2017. Dkt. No. 36 at 1-2. Some of the items for which he billed clearly were necessary—working with outside counsel to discuss court options; communicating with representatives from the companies selling the infringing products; providing outside counsel with information; discussing litigation strategy. Such work is what one would expect an experienced in-house lawyer with intellectual property expertise to perform. Engling also billed, however, for searching and reviewing web sites that offered infringing products; "investigat[ing]" the web sites of companies that offered those products; ordering the jackets; and taking pictures of the jackets. The court agrees with the defense that this is work that a more junior lawyer—even a paralegal—

could accomplish. One does not need a law degree, or years of practice experience, to search the web.

Because Engling lumps numerous activities into a single block of billing time, it was difficult to determine how much time he devoted to what activities. One can see that he spent time reviewing web sites or performing other non-legal activities on January 4, January 13, January 16, January 17 and January 27. The court will deduct **four (4) hours** from the 21.7 hours Engling reports, and will allow the plaintiff to recover for **seventeen point seven (17.7)** hours of Engling's work.

### III. Conclusion

The court **DENIES** the defendant's motion to strike the plaintiff's reply brief in support of the amended motion for attorneys' fees. Dkt. No. 40.

The court **ORDERS** that by the end of the day on March 21, 2018, the plaintiff shall provide the court with evidence in support of its contention that the hourly billing rates for all three counsel are reasonable, as well as a clear statement of the amount of fees it seeks (adjusted for the reductions the court has made in this order), and an explanation of how it calculated that amount.

Dated in Milwaukee, Wisconsin this 7th day of March, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**